**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| TRIPLE TEE GOLF, INC.,<br>a Florida corporation,<br><br>                          Plaintiff,<br>vs.<br><br>TAYLOR-MADE/ADIDAS,<br>a Delaware corporation,<br><br>                          Defendant. | Case No. 11-CV-2974 JLS (WVG)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF No. 40) |
|---|---|

Presently before the Court is Defendant Taylor Made Golf Company, Inc's ("Defendant") Motion for Summary Judgment ("MSJ"). (ECF No. 40). Also before the Court is Plaintiff Triple Tee Golf, Inc.'s ("Plaintiff") Response in Opposition to (ECF No. 43) and Defendant's Reply in Support of (ECF No. 44) the Motion. A hearing on the motion was held on February 19, 2015. Having considered the parties arguments and the law, the Court **GRANTS** Defendant's Motion for Summary Judgment.

## BACKGROUND

In 2011, Plaintiff filed the initial complaint in this matter, alleging infringement of two patents–United States Patent Nos. 7,128,660 ("the '660 patent") and 7,854,667 ("the '667 patent"), which are both titled "Method of Golf Club Performance Enhancement and Articles Resultant Therefrom." (ECF No. 1.) Then, in 2012, the parties filed a Joint Motion to Stay Litigation Pending *Inter Partes* Reexamination of

the Patents-in-Suit. (ECF No. 26.) The Court granted the Joint Motion. (ECF No. 27.)

On July 20, 2012, Defendant filed a request for an *inter partes* reexamination of the two patents. (MSJ 9, ECF No. 40-1.) The result of the *inter partes* reexamination was the cancellation of all claims of the '660 patent except claims 7, 9 and 15. (*Id*. at 9–10.) Then, on February 6, 2013, Defendant filed a request for an *ex parte* reexamination of claim 9. (*Id*. at 10.) After the patent examiner rejected claim 9 as anticipated by another patent, Dammen, Plaintiff "responded to the office action by cancelling claims 9 and 15, amending claim 7, and adding several new claims." (*Id*. at 11.) Plaintiff later cancelled some of the newly added claims, and added three new claims. (*Id*. at 11–12.)

Ultimately, the United States Patent and Trademark Office's reexaminations of the patents resulted "in invalidation of all but four claims of the '660 patent and invalidation of all claims of the '667 patent." (Status Report 2,[1] ECF No. 29.) The four remaining claims in the '660 patent include original claim 7, and claims 20, 21, and 22, which Plaintiff added during the *ex parte* reexamination of the '660 patent.[2] (*Id*. at 4–5.) Of the remaining claims, claim 20 is an independent claim, while claims 7, 21 and 22 are dependent claims. (*Id*. at 5.)

The '660 patent "relates to 'a method of selectably varying the center of gravity and distribution of weighting in a void space in the head of a golf club,'" based on the needs of a particular golfer. (MSJ 7, ECF No. 40-1 (quoting '660 Patent 1:19–21).) The '660 patent focuses on having a variety of positions for the center of gravity, distribution of weight, or weights within the head of the club. ('660 Patent 1:64–67.) There are 27 potential locations in the void space located on an orthonormal matrix

---

[1] For ease of reference, all page numbers cited to are the CM/ECF numbers at the top of the page.

[2] Defendant argues that new claim 20 is essentially the same as old claim 9, which the patent examiner rejected as anticipated by Dammen. (MSJ 12 n.3, ECF No. 40-1.) The only difference is additional language about weighting strategy (c)(I), "which had nothing to do with the Examiner's rejection of claim 9 based on Dammen." (*Id*.) Accordingly, Defendant states it will argue that claim 20 is invalid over Dammen if this case proceeds. (*Id*.)

comprised of three axes (x, y and z). (*Id*. at 2:1–3.) Depending on a golfer's needs, he or she can adjust the center of gravity, distribution of weight, and/or weights accordingly. (*See id*. at 1:64–2:5.) For example, according to the patent specification, a golfer can modify his or her backspin by weighting means at a low Y, low Z coordinate to increase backspin, or at a high Y, high Z coordinate to decrease backspin. (*Id*. at 2:48–51.) Changing the weighting means can affect backspin, penetration, trajectory and hook or slice. (*Id*. at 2:62–67.)

In its First Amended Complaint ("FAC"), Plaintiff alleges that Defendant directly infringed the '660 patent by, "among other things, making, using, importing, advertising, offering for sale to the public, [and] selling" various golf clubs. (FAC ¶ 19, ECF No. 31.) Plaintiff also alleges that Defendant "actively [induced] its agents, distributors, and end users, among others, to employ products that infringe the method of [the '660 patent]," thereby inducing patent infringement. (*Id*. at ¶ 27.) Finally, Plaintiff alleges Defendant committed contributory patent infringement "by, among other things, selling one or more articles or materials such as weight adjustment guides, booklets, videos and tools, which enable infringement of the patented method of the ['660 patent], especially such materials adapted for use in the infringement of Plaintiff's Patent that are not staple articles of commerce." (*Id*. at ¶ 35.)

Defendant responds in the MSJ that is has "discontinued the manufacture and importation of each of the Accused Products." (MSJ 13, ECF No. 40-1.) Defendant further explains that it has not manufactured in this country nor imported into this country any of the Accused Products since before the issuance of the *Ex Parte* Reexamination Certificate of the '660 patent. (*Id*.) Defendant also has no plans to manufacture or import any of the Accused Products in the future. (*Id*.)

**LEGAL STANDARD**

**I.   Summary Judgment**

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

as a matter of law." Fed. R. Civ. Pro. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." *Id.* When the Court weighs the evidence to be presented by the parties, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [his] favor." *Id.* at 255.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. The movant can carry his burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating to the Court that the nonmoving party "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322–23.

Once the moving party satisfies this initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Furthermore, the nonmoving party cannot oppose a properly supported motion for summary judgment by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256. Rather, the nonmoving party must identify those facts of record that would contradict the facts identified by the movant. *Id.* at 256–57.

**II.    Legal Effect of Reexamination**

"Any proposed amended or new claim determined to be patentable and incorporated into a patent following a reexamination proceeding will have the same

effect as that specified in [35 U.S.C. § 252] for reissued patents." 35 U.S.C. § 307(b). 35 U.S.C. § 252 provides that if

> the claims or the original and reissued patents are substantially identical, [surrender of the original patent] shall not affect any action then pending nor abate any cause of action then existing, and the reissued patent, to the extent that its claims are substantially identical with the original patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent.

Accordingly,

> [a] patentee of a reexamined patent is entitled to infringement damages, *inter alia*, for the period between the date of issuance of the original claims and the date of issuance of the reexamined claims if the original and reexamined claims are identical. Reexamined claims are identical to their original counterparts if they are without substantive change. Furthermore, in determining whether substantive changes have been made, [the court] must discern whether the scope of the claims are identical, not merely whether different words are used. If substantive changes have been made to the original claims, the patentee is entitled to infringement damages only for the period following the issuance of the reexamination certificate.

*Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1346 (Fed. Cir. 1998) (internal quotations and citations omitted). "An amendment that clarifies the text of the claim or makes it more definite without affecting its scope is viewed as identical for the purpose of § 252." *Bloom Eng'g Co., Inc. v. N. Am. Mfg. Co., Inc.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997) (internal citations omitted).

Whether a reexamined claim and an original claim are substantially identical is a question of law for the Court to decide. *See Laitram,* 163 F.3d at 1346–47 (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970–71 (Fed. Cir. 1995) (en banc)). To determine whether a reexamined claim is substantially identical to an original claim, "it is necessary to analyze the claims . . . in light of the particular facts, including the prior art, the prosecution history, other claims, and any other pertinent information." *Id*. at 1347 (internal quotations and citations omitted). This includes following "the well-established principle that a court may not import limitations from

the written description into the claims." *Id*.

35 U.S.C. § 252 also establishes intervening rights for reissued patents, which apply to reexamined patents as well. *See* 35 U.S.C. § 307(b). 35 U.S.C. § 252 reads that

> [a] reissued patent shall not abridge or affect the right of any person or that person's successors in business who, prior to the grant of a reissue, made, purchased, offered to sell, or used within the United States, or imported into the United States, anything patented by the reissued patent, to continue the use of, to offer to sell, or to sell to others to be used, offered for sale, or sold, the specific thing so made, purchased, offered for sale, used or imported unless the making, using, offering for sale, or selling of such thing infringes a valid claim of the reissued patent which was in the original patent.[3]

This provision gives an accused infringer "the absolute right to use or sell a product that was made, used or purchased before the grant of the reissue [or reexamined] patent as long as this activity does not infringe a claim of the reissue patent that was in the original patent." *BIC Leisure Products, Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1220–21 (Fed. Cir. 1993). This means that "[a]s long the use or sale of the accused product does not infringe a claim of the reissue patent that was also in the original patent, the owner of the reissued patent has no recourse under the Patent Act." *Id*. at 1221. This provision gives an alleged infringer an absolute intervening right "to continue what would otherwise be infringing activity" in regard to those products that were made, purchased, or used prior to the grant of the reissue patent or reexamination certificate. *Seattle Box Co. v. Indus. Crating & Packaging, Inc.*, 756 F.2d 1574, 1579 (Fed. Cir. 1985); *see id* at 1221.

## ANALYSIS

New claim 20, which requires selectably employing two of the four claimed weighting strategies, "is most similar to original dependent claim 9," because "of the two [original] independent claims in the '660 patent, claims 1 and 11, only claim 1

---

[3] 35 U.S.C. § 252 also establishes an equitable intervening right which a court may afford to an accused infringer that first makes or uses accused products after reissue, but who made substantial preparation prior to reissue. Defendant "is not asserting equitable intervening rights at this time." (MSJ 17–18, ECF No. 40-1.)

(from which claim 9 depended) [also] recited selectably employing two of four claimed weighting strategies." (MSJ 12, ECF No. 40-1.) Additionally, new claim 20 requires and, of the original claims, only claim 9 "required that 'at least one selected strategy includes weighting means not contiguous with any inner surface of said void space.'" (*Id.* (quoting Clark Dec'l ¶ 19, ECF No. 40-2).) Accordingly, the MSJ compares and contrasts the new claims with original, dependent claim 9.

Defendant argues that Plaintiff is not entitled to infringement damages for the time prior to the issuance of the reexamined claims of the '660 patent because new claim 20 is not substantially identical to original claim 9, nor are amended claim 7 and new claims 21 and 22 substantially identical to original claim 9. (MSJ 18, 26, ECF No. 40-1.) Accordingly, Defendant argues that it is entitled to summary judgment on each of Plaintiff's counts in the FAC. (*Id.* at 27.) The Court agrees.

## I.   New Claim 20

In regard to new claim 20, Defendant argues that it differs from original claim 9 in two ways based on newly added language, which reads, "an increase in a Z-axis value does not correspond to a decrease in the Y-axis value."[4] (*Id.* at 18.) First, Defendant argues this added phrase imposes a new requirement that the location of the weighting means along the Y and X axes be adjustable. (*Id.*) Second, Defendant argues that this also requires that the "adjustment is restricted to a path that defines a non-decreasing function between low Y, low Z coordinate to a high Y, high Z coordinate." (*Id.*)

### A.   *Adjustable Weighting Means*

Utilizing the general principles of claim construction, Defendant explains that claim terms are generally "given their 'ordinary and customary' meaning, which is 'the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention.'" (*Id.* at 19 (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303,

---

[4] Plaintiff agrees that new claim 20 and original claim 9 are identical except for the addition of this phrase. (Resp. in Opp'n 7, ECF No. 43.)

1312–13 (Fed. Cir. 2005) (*en banc*)).) A claim should be read "'in the context of the entire patent, including the specification,'" but the court should not import limitations from the specification into the claims. (*Id.* (quoting *Phillips*, 415 F.3d at 1313).) Courts consider "'the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art" to discern a claim's ordinary and customary meaning. (*Id.* (quoting *Phillips*, 415 F.3d at 1314).) In determining a claim's meaning, a court first considers the words of the claim themselves, then may look to other intrinsic evidence, such as the patent specification and the prosecution history, and then, if necessary, extrinsic evidence. (*See* Resp. in Opp'n 8–9, ECF No. 43 (citing *Vitronics Corp. v. Concentronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).)

Applying these principles, Defendant explains that the newly added phrase, specifically "an increase in the Z-axis value," must mean that the weighting means can be adjusted because to increase the Z-axis value requires the weighting means already be "present in the golf club head at another location having a lower Z-axis value." (*Id.* at 19–20.) The adjustment may correspond to a change in the location of the weighting means along the Y-axis, but may not cause a decrease in the location along the Y-axis. (*Id.*)

Defendant argues that this differs from original claim 9,[5] which "lacked any language indicating that the weighting means must be adjustable within the claimed ranges." (*Id.* at 20 (quoting Beach Dec'l ¶ 20, ECF No. 40-3).) Original claim 9 read "'providing within said void space weighting means between a low Y, low Z coordinate to increase backspin to a high Y, high Z coordinate'" to decrease backspin. (*Id.* (quoting Beach Dec'l ¶ 20, ECF No. 40-3).) Defendant argues that the original claim's strategy "was satisfied by simply placing a weighting means at the desired location during design and manufacture, without any implication that its location might

---

[5]Reference to original claim 9 also refers to original claim 1, upon which original claim 9 depended.

1 be adjusted." (*Id*. (citing Beach Dec'l ¶ 20, ECF No. 40-3).) Defendant supports this argument by noting that all except for one of the '660 patent's embodiments disclose "club heads with fixed weights," such that they could not be adjusted. (*Id*.; *see e.g,* Clark Dec'l ¶ 4, Ex. A, ECF No. 40-2).)

Defendant contends that the patent examiner confirmed their interpretation of original claim 9 during the *ex parte* reexamination of claim 9, by stating that "'the claim does not recite adjustability of the weights for different weighting strategies'" in response to Plaintiff's argument that the claim contemplated adjustable weighting means. (*Id*. (quoting Clark Dec'l ¶ 13, Ex. D at p. 56, ECF No. 40-2).) Defendant also asserts that the Board of Patent Appeals and Interferences (now the Patent Trial and Appeal Board) ("Board"), issued a similar statement in regard to claim 1 of the '667 patent, which "was a continuation-in-part of the '660 patent" and which "recited a similar limitation to the weighting strategy" outlined in original claim 9. (*Id*. at 20–21.) The Board, in response to Plaintiff's assertion that the weighting elements were adjustable, held "that the claims of the '667 patent 'do not require adjustability' or embody 'any requirement of a capability of adjusting or moving a weight element along or within the claimed range.'"[6] (*Id*. at 21 (quoting Clark Dec'l ¶ 23, Ex. K at p. 127, ECF No. 40-2).)

Defendant concludes that because new claim 20 provides for adjustable weighting means along the Z and Y axes where original claim 9 did not, the new claim is not substantially identical to the original claim. (*Id*. at 21.)

Plaintiff responds to Defendant's argument that original claim 9 did not require adjustable weighting means by refuting the Declaration of Todd Beach with its own declaration submitted by John P. Gilling, the inventor. (*See* Resp. in Opp'n 13, ECF

---

[6]Plaintiff argues that any reliance on the '667 patent prosecution history should be disregarded because the '667 patent recited the term "securing" whereas the '660 patent recited the term "provided," and, therefore, the conclusion that the '667 patent did not require adjustable weighting means has no bearing on whether the original claims in the '660 patent require adjustable weighting means. (Resp. in Opp'n 15, ECF No. 43.) The Court declines to consider the '667 patent prosecution history.

No. 43.) Gilling explains that the original claim recited adjustability of the weighting means based on the phrases "'to modify back spin,' 'to modify ball penetration' and 'to modify ball trajectory'" in parts (c)(I), (c)(ii), and (c)(iii) of the original claim. (Gillig Dec'l ¶ 20, ECF No. 43-2.) Gillig asserts that the term modify "inherently indicates a capability of adjustment," as does the reference in the claim to the term "between," which allows the coordinate of the weighting means to fall within a given range. (*Id*.) Gillig further argues against Defendant's contention that the original claim allowed for the placement of the weighting means at a given spot during design and manufacture, "without ability to adjust its location," by asserting that the continued use of the terms "modify" and "between," along with Figure 5 in the '660 patent "should render beyond question that [the '660 patent] always related to adjustable weighting locations within a 3x3x3 orthonormal matrix of weighting elements." (*Id*. at ¶ 21.)

    As an initial matter, the Court confirms that determining whether a reexamined claim and an original claim are substantially identical is a question of law for the Court to decide. *See id*. at 1346–47 (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970–71 (Fed. Cir. 1995) (en banc)). Accordingly, Plaintiff's suggestion that disagreements among the declarations submitted by each party preclude a finding of summary judgment are misplaced. The Court may look to the extrinsic evidence submitted by each side to construe a term if it cannot discern a claim's meaning based on the words themselves or the other intrinsic evidence. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1585 (Fed. Cir. 1996). Given the hierarchy of evidence and the requirement that extrinsic evidence only be relied upon if necessary, it is not even certain that the Court would consider the declarations in its construction of new claim 20 and old claim 9.

    The parties do not disagree that new claim 20 requires adjustable weighting means, but do disagree over whether original claim 9 also required such adjustability. The Court agrees with Defendant that new claim 20 requires adjustable weighting means whereas old claim 9 did not require such adjustability and, therefore, that new

claim 20 is not substantially identical to original claim 9.

The Court finds that Gillig's reliance on the term "modify" in original claim 9 unpersuasive because, as Defendant asserts in its Reply, "modify" refers to altering backspin, ball penetration, and ball trajectory, and not modifying the placement of the weighting means. (Reply 7, ECF No. 44.) Similarly, the Court concludes that Gillig's contention that the word "between" in original claim 9 represents ability to adjust the weighting means within a given range equally unpersuasive because that simply means that the weighting means could have been placed within the range during design and manufacture. Original claim 9 recites "providing . . . weighting means between a low Y, low Z coordinate . . . to a high Y, high Z coordinate." ('660 Patent 7:66–8:2.) Nowhere in section (c)(I) of original claim 9, nor in the rest of the original claim is there a suggestion that the weighting means must be adjustable; they must simply be provided within the given range. Accordingly, an analysis of the words in original claim 9 leads the Court to conclude that it did not require adjustable weighting means.

Additionally, the '660 patent prosecution history confirms this conclusion. During the reexamination of the '660 patent, the patent examiner stated that "[t]he claim does not recite adjustability of the weights for different weighting strategies." (Clark Dec'l, Ex D, Office Action in *Ex Parte* Reexamination: Non-Final Rejection 55, ECF No. 40-2.) Lastly, the Court's analysis accords with the general principle that limitations found solely in the patent specification are not imported into claims for purposes of claim construction. Gillig's statement that Figure 5 from the '660 patent specification somehow supports a finding of adjustability, even if correct, cannot be used to import limitations into the claim. In light of the Court's conclusion that original claim 9 did not require adjustable weighting means, the Court finds that new claim 20 and original claim 9 are not substantially identical.

/ / /

/ / /

/ / /

### B.     Restrictions on Adjustment of Weighting Means

Defendant further argues that new claim 20 differs from original claim 9 because it "clearly contemplates a path for adjusting the weighting means in which the Z-axis value increases in order to decrease backspin," and requires that "'an increase in Z-axis value cannot correspond to a decrease in Y-axis value.'" (MSJ 21, ECF No. 40-1.) This "defines a non-decreasing function between the Z- and Y-axis values of the weighting means." (*Id*. (citing Beach Dec'l ¶ 24, ECF No. 40-3).) An increase in the Z-axis value "precludes a decrease in the Y-axis value of the weighting means, implicitly allowing the Y-axis value to increase or remain constant." (*Id*. (citing Beach Dec'l ¶ 24, ECF No. 40-3).)

Defendant asserts that original claim 9 did not contain the restriction that as the value of the Z-axis increases, the value of the Y-axis must increase or stay constant. (*Id*. at 22.) Original claim 9 "allowed the weighting means to be positioned anywhere between a low Y, low Z coordinate to a high Y, high Z coordinate," which "meant that the weighting means could be provided just about any place within the golf club head." (*Id*. (citing Beach Dec'l ¶ 25, ECF No. 40-3).)

Defendant argues that Plaintiff's assertion that new claim 20 does not change the scope of original claim 9 is incorrect because the only way for Plaintiff to be correct is if "the *only* way to achieve decreasing backspin between a low Y, low Z coordinate to a high Y, high Z coordinate . . . would be to follow a path defined by a non-decreasing function," such that backspin would only decrease if an increase in the value of the Z axis does not correspond with a decrease in the value of the Y-axis. (*Id*.) Defendant explains that decreasing backspin can be achieved by increasing the value along the Z-axis with a corresponding decrease along the Y-axis, as long as "the backspin change from a positive movement along the Z-coordinate is larger than the backspin change from a negative movement along the Y-coordinate."[7] (*Id*. at 24.)

---

[7]Defendant provides a comprehensive explanation of the center of gravity of golf club heads and its affect on backspin to show that a decrease in backspin need not be the result of a increase along the Z-axis without any corresponding decrease along the Y-axis. (*See* MSJ

1  Therefore, Defendant argues that new claim 20 has a different scope than original claim
2  9 because the limitation imposed by new claim 20 was not inherent in original claim
3  9. (*Id.* at 26.) Accordingly, Defendant argues that the new claim is not substantially
4  identical to the original claim in regard to the restrictions it imposes on the path of the
5  weighting means. (*Id.*)

6  Plaintiff, in contrast, argues that the phrase added to new claim 20 does not
7  change the scope of original claim 9 by restricting the adjustable weighting means to
8  a specific path, which, it contends, Gillig's declaration proves. (*See* Resp. in Opp'n 13,
9  ECF No. 43.) Gillig asserts that the added language in new claim 20 "simply assured
10 that Strategy (c)(I) could not possibly include any aspect of the strategy of Dammen,"
11 which calls for an increase along the Z-axis to correspond with a decrease along the Y-
12 axis, and, "therefore did not narrow, broaden or change the scope of original Claims
13 1 and 9." (Gillig Dec'l ¶ 22, ECF No. 43-2.) Gillig agrees that the new phrase can be
14 described as "'a non-decreasing function between a low Y, low Z coordinate to a high
15 Y, high Z coordinate,'" and concurs that this function is not the only way to change
16 backspin. (*Id.* at ¶¶ 24, 27 (quoting Beach Dec'l ¶ 24, ECF No. 40-3).) However, Gillig
17 states that the '660 patent "requires concurrent incrementation of weighting along each
18 Y and Z axis *and prohibits any deviation or excursion* from that such strategy," and
19 that the original patent never permitted an increase in the Z axis to correspond with a
20 decrease in the Y axis. (*Id.* at ¶ 32 (emphasis in original).) Plaintiff briefly concludes
21 that Figure 5 in the '660 patent shows that "the weighting path of Claim 9 was always
22 restricted." (Resp. in Opp'n 13, ECF No. 43.)

23 Similar to the first issue, the parties agree that new claim 20 restricts the path of
24 the weighting means, that the added language represents a non-decreasing function, and
25 that the non-decreasing function is not the only way to modify backspin. The parties

---

22–26, ECF No. 40-1.) Defendant also notes it has determined that the weighting strategy at
28 issue, as recited in original claim 9 and new claim 20, is incorrect because a low Y, low Z
coordinate decreases backspin and a high Y, high Z coordinate increases backspin, but that
does not change its analysis regarding the scope of the two claims. (*Id.* at 23, n.6.)

disagree, however, over whether the restricted path recited in new claim 20 was inherent in original claim 9.[8] The Court concludes that restriction on the path of the weighting means was not inherent in the original claim and that, therefore, new claim 20 is not substantially identical to original claim 9 for this additional reason.

Beginning with an analysis of the words of the claims themselves, it is clear that original claim 9 did not recite the limitation included in new claim 20 which reads "in which an increase in a Z-axis value cannot correspond to a decrease in Y-axis value." ('660 Ex Parte Reexamination Certificate 2:15–18.) The words of original claim 9 themselves do not limit the path for the weighting means. Plaintiff argues that notwithstanding the lack of the recitation of this limitation in the original claim, the '660 patent specification, particularly Figure 5, make this limitation inherent in the original claim such that the amendment merely clarified the original claim. This argument, however, is contrary to the well-established principle that prohibits courts from importing limitations found only in the patent specification into the claims. *Laitram*, 163 F.3d at 1347 (noting "the well-established principle that a court may not import limitations from the written description into the claims"). The Court finds that nothing in the original claims suggest that the weighting means have to be placed at a specific location in accordance with the path shown in Figure 5 and that, therefore, new claim 20 is not substantially identical to original claim 9.

The '660 patent prosecution history is also instructive. That original claim 9 was cancelled at least partly on the ground that it was anticipated by Dammen is telling. Contrary to Plaintiff's belief that the weighting path in original claim 9 was always restricted per Figure 5, the patent examiner, in response to then-pending claim 28, which was similar to original claim 9, explicitly "advised the Patent Owner's rep to amend claim 28 to add recitation along the lines that a weighting strategy of increasing the Z axis does not include decreasing the Y-axis," the very path Dammen teaches.

---

[8]The parties also disagree over the precise meaning of the added language in new claim 20; however, "the main dispute is whether any such limitation was inherent in original claim 9." (Reply 9, ECF No. 44.)

(Clark Dec'l, Ex. F, *Ex Parte* Reexamination Interview Summary 79, ECF No. 40-2.) The patent examiner seems to have been assisting the patent owner in his endeavor to overcome Dammen and specifically suggested the inclusion of a more definite weighting path to ensure that it excluded the path taught by Dammen. The patent examiner did not conclude that this limitation was inherent in original claim 9 and neither does the Court.

In addition, the difference between new claim 20 and original claim 9 is similar to the situation in *Bloom*, in which the patent owner added limiting words to claims to overcome prior art. *Bloom Eng'g Co., Inc.*, 129 F.3d at 1250–51. In that case, the patent owner argued that the newly added words "merely clarified" what was already implicit in the claims based on the patent specification. *See id*. at 1250. The court, however, affirmed the district court's finding that the newly added limitation was not recited in the original claims, that the addition was necessary to overcome prior art, and that the claims were sufficiently narrowed and limited by the additional language that it constituted a substantive change. *Id*. at 1251. In light of the words of the claims themselves, the patent prosecution history, and the guidance provided by the Federal Circuit in *Bloom*, the Court concludes that new claim 20 limits the scope of the original claim and does not, as Plaintiff suggests, merely clarify the claim.

## II. Amended Claim 7 and New Claims 21 and 22

Defendant argues that amended claim 7, and new claims 21 and 22 are also not substantially identical to original claim 9 because they are all dependent upon new claim 20. (MSJ 26, ECF No. 40-1.) Accordingly, because these three claims "incorporate all of the limitations of claim 20," they are different in scope than original claim 9. (*Id*. (citing 35 U.S.C. § 112(d) ("A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers.")).)

Plaintiff initially argued that new claims 21 and 22 should not be summarily dealt with based on the analysis of new claim 20 because, unlike new claim 20, they should be compared with original claim 11 (part (b)) and original claim 12 (part (e)(iii))

respectively. (Opp'n 15, ECF No. 43.) However, at the hearing on the instant motion, Plaintiff's counsel agreed that if the Court finds that new claim 20 is not substantially identical to original claim 9, then the other remaining claims follow suit.

In light of the fact that amended claim 7 and new claims 21 and 22 depend on new claim 20, which the Court, as explained above, finds is not substantially identical to original claim 9, the Court concludes that these claims are also not substantially identical to original claim 9. A dependent claim incorporates "by reference all the limitations of the claim to which it refers," so new claims 21 and 22, even if most similar to original claims 11 and 12, also require comparison to original claim 9 (and original claim 1 for reasons explained above) as a result of their dependence. 35 U.S.C. § 112(d). The comparison to original claim 9 is the same regardless of whether it is brought about by analyzing amended claim 7 or new claims 20, 21 or 22. Therefore, the Court finds that amended claim 7, and new claims 21 and 22, are not substantially identical to the original claim.

### III.  Summary Judgment

Based on the conclusion that none of the current claims of the '660 patent are substantially identical to original claim 9, Defendant argues that it is entitled to summary judgment on all three of Plaintiff's counts. (MSJ 27, ECF No. 40-1.)

First, Defendant asserts that because none of the claims in the reexamined '660 patent are substantially identical to the original '660 patent, "the reexamined '660 patent only has effect from the issuance of the *Ex Parte* Reexamination Certificate on June 12, 2014." (*Id.* (citing 35 U.S.C. §§ 252, 307(b)).) Accordingly, Defendant argues that Plaintiff does not have a viable claim for any alleged direct infringement prior to June 12, 2014. (*Id.*) Defendant further contends that it has "an absolute intervening right from June 12, 2014 to continue to use, offer to sell, and sell any Accused Products that were made in the U.S., or imported into the U.S., before that date," such that it cannot be liable for direct infringement with respect to products made or imported

before the issuance of the *Ex Parte* Reexamination Certificate.[9]  (*Id*. (citing *BIC Leisure Products*, 1 F.3d at 1220-21).) Defendant also argues that because it has not manufactured in the U.S., nor imported into the U.S., any new Accused Products since June 12, 2014, Plaintiff has no viable claim against Defendant for ongoing direct infringement. (*Id*. at 27–28.)

Next, Defendant argues that Plaintiff's claims for indirect and contributory infringement must also fail because "[t]he law is clear that one cannot be liable for indirect infringement without evidence of direct infringement by third parties." (*Id*. at 28 (citing *Joy Tech., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993) ("Liability for either active inducement of infringement or for contributory infringement is dependent upon the existence of direct infringement.")).) Defendant explains that each of its distributors, resellers, and end user-customers have the same absolute intervening rights under 35 U.S.C. §§ 252 and 307(b) as it does, such that there are also no acts of direct infringement by third parties. (*Id*. at 28–29.) If there is no direct infringement, then, Defendant argues, Plaintiff's claims for indirect infringement must also fail. (*Id*. at 29.)

In light of the Court's finding that new claim 20 is not substantially identical to old claim 9, the Court concludes that Defendant is entitled to summary judgment as to all three of Plaintiff's counts in its FAC. A finding that the new claims are not substantially identical to the original claims precludes recovery for infringement from anytime prior to the issuance of the reexamination certificate on June 12, 2014.

---

[9] Plaintiff argues, in contrast, that Defendant does not have an absolute intervening right because Defendant did not rely on any "perceived infirmities" in the original patent in making its decision to manufacture, sell, and import the accused products. (Resp. in Opp'n 20, ECF No. 43.) To support this argument, Plaintiff relies on an unreported district court case, *Quad Envtl. Technologies v. Union Sanitary Dist.*, 17 U.S.P.Q. 2d 1667 (N.D. Cal. 1990), which has been reversed, in which the judge denied intervening rights on the ground that Defendant did not establish that it relied on infirmities in the original patent. (*Id*.) Although it is unclear, Plaintiff may be arguing that Defendant is not entitled to equitable intervening rights under 35 U.S.C. § 252, which the Court may award; however, Defendant never asserts that it is entitled to equitable rights, but rather argues that it is entitled to absolute intervening rights also outlined in 35 U.S.C. § 252. Regardless of Plaintiff's intended purpose for including this argument, the Court does not find it persuasive.

1  Plaintiff offers no evidence of infringement subsequent to the issuance of the
2  reexamination certificate. Further, without direct infringement there can be no indirect
3  infringement. *Joy Tech., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993) ("Liability
4  for either active inducement of infringement or for contributory infringement is
5  dependent upon the existence of direct infringement.").

   The Court concludes that Defendant and its distributers, resellers, and end user-customers have absolute intervening rights pursuant to 35 U.S.C. § 252 because the Accused Products were made or imported into the United States prior to the issuance of the reexamination certificate. Defendant does not refute the fact that Plaintiff has not made or imported Accused Products since June 12, 2104. Gillig does state that "all of the R9 and R11 series [golf clubs] sold by Defendant could not have reached distributors, retailers and end users by June 12, 2014;" however, the inquiry is whether the Accused Products were made or imported into the United States by that date, not whether they reached sellers or customers. *See BIC Leisure Products*, 1 F.3d at 1221 (absolute intervening rights cover "products already made at the time of reissue"). Accordingly, Defendant has absolute intervening rights in regard to the Accused Products.

**CONCLUSION**

For the aforementioned reasons, the Court finds that Defendant is entitled to judgment as a matter of law, and **GRANTS** Defendant's MSJ. The Clerk of the Court shall close the file.

**IT IS SO ORDERED**.

DATED: March 23, 2015

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge